UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS, PLANO  DIVISION

_____

RON SHAHAR,

              Plaintiff,

    against,

SIGALIT OFEK, NAFTALI SHILO, NEFESH B'NEFESH,
EINAT MESHULAM, LAUREN AKUKA, GIDEON SAAR,
ESTHER HAYUT and RUTH HALPERIN KADARI,
              Defendants.

_____

 4:22cv 632 SDJ/can

**COMPLAINT**

**FILED**

JUL 2 5 2022

Clerk, U.S. District Court
Eastern District of Texas

Plaintiff, for his complaint pro se, alleges and claims as follows:

**PRELIMINARY STATEMENT**

1.  This lawsuit arises out of a malicious extortion ring in Israel that targets non-Israeli men married to Israeli women and extorts them with the purpose of robbing them of all property and using parental alienation as a secondary extortionist tool. The amount of the claim is 8,576,000 in compensatory damages, $6,000,000 in punitive damages for a total of $14,576,000.

2.  This ring of extortionists uses inter-state and international wires via US mailboxes to notify the men of a hearing scheduled in Israel which require personal appearance.  If the man doesn't travel to Israel a default judgment is entered for any bogus and fictitious monetary claim that the woman makes up (and it is drafted in a way so that the woman can seek reciprocity and enforce it in the USA), and if the man takes the risk and travels to Israel, the woman can immediately issue a no exit order preventing him from returning to his home overseas and essentially using his body as collateral to any made-up and fictitious claim.

3.  Although the members of the racketeering ring are members of the Israeli judiciary or government, that "judiciary" is not entitled to any immunity or "state action" recognition of sovereignty, because the courts they operate do not resemble anything that even remotely looks like an adversarial tribunal with fair justice and equal protection.  On the contrary, the tools used are pure extortionist and they are done with the malicious intent to discriminate against men, inspired by the agenda of radical feminism and male hate mongering.

4.   Plaintiff and many other foreign men similarly situated was and still is a victim of such nefarious extortion, whereby his former wife filed a bogus claim for 15,000,000 NIS based on a contract and 54,000 NIS per month in child support until the year 2037, completely without any evidence or basis in the marital contract, and based on her words alone was trapped in Israel 14 moths, seeing all his business in the US and other countries collapse to pieces and living a dog's life in Israel without the ability to earn a living.

5.   After Plaintiff's life was redeemed by his mother who paid a ransom of 465,000 NIS to rescue her son, now again the defendants place the Plaintiff in a life threatening dilemma:  to return to Israel to attend proceedings and be locked in that country again, for an unknown period or until death, or not to go and risk a default judgment or striking all his counterclaims, and then having to defend it again in the US when the woman comes to domesticate her default judgments.

6.   Plaintiff's complaint is based on 18 U.S.C. § 1962(c) which provides a private cause of action for RICO to an injured person where the conduct of an enterprise creates a pattern of racketeering activity that is the proximate cause of the individual's harm.

7.   Defendants' misrepresentation was intentional and willful.  As such, the conduct of the defendant constitutes conduct to further an enterprise through repeated acts of mail fraud, wire fraud, and intentional fraudulent misrepresentation.

<u>Parties</u>

8.   Plaintiff Ron Shahar is Australian born and a resident of Collin County, Texas.  He is 52 years old and a father of 3 children who are in Israel. His business is in the trade of old, expired, mutilated and uncurrent notes and coins.  In 2007 he made Aliyah (immigration) to Israel and in 2020 his wife started a divorce and thus Plaintiff fell victim to the extortionist ring of feminists that operate in Israel.  Plaintiff has assets in Texas, himself or with partners which are subject to litigation against the United States Mint.  Plaintiff's address is 405 Club House Dr., Allen, TX 75002.  Tel. +1 (626) 348-9744

9. Defendant Sigalit Ofek is a citizen and resident of Israel. She is a Judge in the Family Court of Tel Aviv. This defendant holds extreme feminist ideation. She is a male hate monger against men and discriminates against them solely due to their sex, and she is chief extortionist who extorted Plaintiff since May 2020 to shell out 15,000,000 NIS (Shekels which is $4,400,000) 54,000 NIS a month (650,000 NIS a year or $200,000 USD a year until the year 2037), surrender his house and luxury car, give up contact with his children, and all this was done with intent to domesticate the amounts as a judgment in the US and seize Plaintiff's property in Texas. Her address is 20 Yosef Zvi Street, Ramat Gan, Israel.

10. Defendant Naftali Shilo is a citizen and resident of Israel. He is a judge in the District Court of Tel Aviv sitting in Family Appeals. This defendant holds extreme feminist ideation. He is a male-hate monger against men and discriminates against them solely due to their sex and is an aider and abettor of extortion of men. He was sued a few years ago by a Jewish father from California, Mr. Eitan Eliahu, for extorting his sister and mother to give up their apartments so that his wife, also a California resident receive them based upon fictitious claims she made up. Case No. 14-cv-01636-BLF, US Dist.Cr, Northern Dist in San Jose, Ca. Shilo's address is 562 Hagefen St, Efrata, West Bank, Israel 9044613. Tel +972-2-9933743.

11. Defendant Nefesh b'Nefesh is a nonprofit organization with is licensed and subcontracted by the State of Israel to promote immigration to Israel by Jews from all the English-speaking world. They operate in Texas under auspices of the Jewish Federation of Texas. They lure Jewish men to move to Israel without telling them that in their country they are considered second class citizens (if not worse), they have no rights to their children, their entire property and savings may be confiscated and given to the wives on bogus claims, they may be subject to extortion and may not be allowed to return to their homelands for many years unless they pay a ransom of tens of thousands of dollars and even hundreds of thousands of dollars. This defendant operates out of Jewish Community Center of Dallas where they hold "**Nefesh b'Nefesh Pre-Aliyah Planning Workshops**". Their address is Jewish Community Center of Dallas 7900 Northaven Road Dallas, TX. Defendant Nefesh b'Nefesh acted in conspiracy with codefendants in violation of 18 U.S. Code § 1349.

3

12. Defendant Einat Meshulam is a citizen and resident of Israel. At the relevant times she was a Magistrate at the Family Court of Tel Aviv dealing with no exit orders against men. She extorted Plaintiff by conditioning his departure from Israel for the ransom sum of 840,000 NIS ($250,000), and only after 14 months (and huge legal fees) the ransom was lowered to 350,000 NIS ($105,000). Defendant Meshulam was also sued in the past by American Jewish men in the US for crimes against humanity, abuse, and torture. Her address is 7 Hillel Yafe St., Hadera Israel 3820310.

13. Defendant Lauren Akuka is a citizen and resident of Israel. At the relevant times she was a Magistrate at the Israel Enforcement and Collections Authority (the State Bailiff). After the ransom amount for Plaintiff to vacate the no exit, Defendant Sigalit Ofek raised it to 465,000 NIS ($135,000) to be deposited in the 2 bank checks, one at the Court and one at the Enforcement Authority. When Plaintiff deposited the bank check in the Enforcement Authority of $30,000, Defendant Akuka in her own *sua sponte* sent the check to Plaintiff's wife to cash and use it to finance Court fees needed to sue plaintiff for 15,000,000 NIS ($4,400,000). Akuka's address is 1 Weitzman Street, Tel Aviv Israel.

14. Defendant Gideon Saar is a citizen and resident of Israel. He now serves as the Minister of Justice in Israel. He is also a firm believer in the theories of the radical feminism cult and during his tenure he promoted anti male legislation that would make the lives of men in divorce proceedings hell on earth. As a feminist he opposed any attempt to wipe out the statutorily shameful laws that outright discriminate against men. His address: 29 Tzalach A-Din St., Jerusalem Israel.

15. Defendant Esther Hayut is a citizen and resident of Israel. She is the chief judge of the Supreme Court in Israel and a fanatical follower of the radical feminism cult. Under her leadership and guidance every man in Israel who enters a divorce proceeding is treated like dirt, with the purpose to annihilate him, destroy him, impoverish him, transfer his property to women, alienate him from his children and drive him to death or suicide. Her address is 23 Yonatan Street, Tzahala, Tel Aviv.

16. Defendant Ruth Halperin Kaddari is a citizen and resident of Israel, She heads an organization called the "Rackman Center for Women", which solicits donations in

4

every state of the 50 US States and in Israel is the number 1 source for dissemination of hateful articles and proposed laws that reek of male hate and are inspired by the Nazi *Der Stürmer* propaganda against Jews, only in our days she targets male Jews and wishes for their death and annihilation.  Her influence over the Israeli parliament is so powerful that every one of the 120 members of the Knesset is afraid of her unleashing her propaganda instruments against him or her. Defendant Halperin Kaddari acted in conspiracy with codefendants in violation of 18 U.S. Code § 1349. Kaddari's address is at the American Friends of Bar Ilan, 60 East 56th Street, New York, NY 10022, Tel 1-212-906-3900.

Jurisdiction and venue

17. This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331, because it presents a Federal question under FLSA (29 U.S.C. § 206), RICO (18 U.S.C. §1962), and Mail and Wire Fraud (18 U.S.C. §§1341, 1343). This Court also has supplemental jurisdiction over the Plaintiffs' common law claims pursuant to 28 U.S.C. Sec 1367.  In addition, the Court has jurisdiction over this Plaintiff's FLSA claim pursuant to 29 U.S.C. Sec 216 (b).  Also, for crimes against humanity (discrimination based on sex against *jus cogens* and the laws of all nations This action is brought pursuant to 42 U.S.C. § 1983, the First and Fourteenth

18. This Court has personal jurisdiction over the Defendants because the Defendants operate business in the State of Texas.

19. Venue is Proper in the District of Texas pursuant to 28 U.S.C. § 1391(b). The Defendants and directed their actions and calculated their *extortionist scheme* towards property of the Defendant in Portland, Texas.

FACTS AND BACKGROUND
    a.  Legal discriminatory laws in Israel

20. The State of Israel in the past 25 years has been taken over by the ideology of radical feminism, and all the arms of government, state authorities and the Judiciary ardently and vigorously implement the scriptures of the feminism cult.

21. The statutes expressly discriminate in favor of women.  They receive automatic custody of the children (the only country in the world where the tender years presumption was not abolished), and they are exempt from paying and/or participating in child support, which means that even if they are non-custodian parents, they still can collect child support, and even if they are richer than the man significantly, he still must pay the woman no matter what.

22. Contrary to other countries where calculate child support is based on income, and it is suspended or annulled in case of physical invalidity or unemployment, in Israel the child support collections never stops.  It also never stops even if the father has new children with another woman, those children are being discriminated and doomed to poverty.

23. The amounts awarded under the title of child support are nothing like what is considered child support elsewhere. It begins with an obligatory minimum of 1,600 NIS ($460) per child, plus 30$-50% of the woman's rent and all housing maintenance, plus 50% of nursery (can be $350 in toddlers), 50% extracurriculars and after class lessons activities, 50% private tutors, 50% dental, and even compensation for time the mother spends with her children as custodian mother ("Dmey Tipul").

24. The award of the so called "child support" can easily be fixed at 80% of actual income, 100% of the income and even 200%-300% of the income.

25. These awards that are so draconian place Israel at the top of the international (OECD) chart in awards of child support, 3 to 4 times more than the average award in the US and Europe, even though the average salaries in Israel are half of that in the US and Western Europe.

26. Women also enjoy an immunity from prosecution for making false violence and rape complaints at the police, and this actually encourages almost every woman in Israel to start the divorce at the police station rather than at the Courts.

6

27. All ancillary professionals such as government social workers, private experts, psychologist performing "Parental Fitness" exams to men are all trained in ultra-radical feminist organizations such as Rackman Center, WIZO and Naamat.

28. Already in November 2011 the UN Committee of Social, Economic and Cultural Rights condemned Israel for not amending the laws to comply with international standards and norm, including the demand to abolish the preferential custody to woman, lower the child support rates so that they commensurate with income and time with the children, and take measures to reduce the number of men committing suicide during divorce proceedings, which was 300 then and 450 now.

29. The same Committee convened again in October 2019 and admonished Israel for not taking any legal steps to change the hostile legal environment to men, and not passing a law, as per the obligations under the UN Conventions that guaranties equality between men and women.

30. Israeli men have been making petition after petition to the Supreme Court (now headed by Defendant Hayut) to abolish the discrimination against men, and all of them failed and dismissed the same day they were filed. Judge Edna Arbel justified one such dismissal by saying that women were oppressed for generations, and now is the time for corrective discrimination in favor of women. That essential a free ticket to all judges in Israel to literally rob men of their assets and their children.

b.  <u>The extortionist Ring targeting foreigners</u>

31.    Foreign men, Americans, Australians, and others who are married to Israeli women are especially vulnerable to the extortionist tool of no exit orders. This injunction is easily available for women to enjoin that men's ability to leave the State of Israel, return to his original family and return to a society where they can earn a living, because in Israel their lives become hell on earth very quickly: all their assets and savings are immediately placed under liens, they are kicked out of their homes (in many cases to the street), their credit cards and bank account s blocked, and many are allowed to see the children only once a week for one hour in a heavily guarded security facility called "Merkaz Kesher" or Contact Center.

32. These no exit orders actually seize the body of the foreign father as a collateral security for the payment of child support debts until the children are 21. It is a form of modern enslavement, since the state is holding the body of a human being as collateral., and meanwhile he is doomed to live a dog's life in destitution and poverty.

33. To be able to vacate these *ex parte* no exit orders the foreign men are required to shell out a bond of several years in advance (anywhere between 2 to 5 years' worth of child support. This bond is actually a ransom in extortion to obtain the liberty of the body of the man. In Plaintiff's case, Defendant Meshulam fixed the bond at 840,000 ($250,000) NIS and only a year and a half later she lowered it to 350,000 NIS ($115,000) by her, and then raised again to 465,000 NIS by Defendant Ofek.

34. It is important to note that this hefty bond came in addition to placing liens on Plaintiff's 50% ownership of an apartment valued at 6,700,000 NIS (1,950,000), and a luxury Volvo valued at 330,000 NIS ($95,000). These liens are worth much more than the $300,000 maximum that Yafit could collect from the marital contract, but because she artificially invented a claim for 15,000,000 NIS ($4,400,00), the defendants Ofek and Meshulam demanded more astronomical amounts of money that Plaintiff never had.

35. Thus, a unique racketeering and extortionist ring developed in Israel whereby men who are in Israel cannot leave unless they surrender and sign over everything they own to their wives and men who are overseas are threatened by the Judges and Magistrates that if they do not come to Israel to attend hearings in person, a default judgment will be entered for non-appearance giving the wives, all the properties and veto rights about access to the children, extortionist amounts of child support and exclusive rights to make decisions about medical and education needs of the children.

36. These foreigners know that either way they lose because the risk of traveling to Israel for what looks like a one-day testimony will mean that upon arrival a no exit order will be issued, and it would take months or years just to litigate the procedure of vacating the no exit. Meanwhile, that foreign father has no home, no ability to earn a

living, and he must shell of tens of thousands of dollars to lawyers to litigate the no exit.

37. Who in his right mind would risk such a life-threatening decision and take that flight not knowing if he will ever be allowed to exit the land of the Jews at all, or alive?

38. Such demands to appear in person in Israel are often emailed by the defendants to the Plaintiff overseas across mail and wire channels such as emails crossing international borders.

c. **Plaintiff's circumstances**.

39. In 2008 Plaintiff met an Israeli woman in a Jewish gold diggers' site. He was lured by Defendant Nefesh b'Nefesh to immigrate to Israel and materialize the dreams that all Jews should live together in the promised land.

40. On July 9, 2008, Plaintiff and wife Yafit Shahar executed a contract stating that Yafit will get in divorce $25,000 for every year of marriage (Paragraph 21 B of the Contract), if there are no children, and if they are children, she will get a compensation for carrying children in her womb of $100,000 fixed full and final price for each child up to 2 children or $200,000 in total (Paragraph 21 C of the Contract). The apartment that Plaintiff bought in Ramat HaSharon Israel, and all his international money trading business remain his.

41. On August 3, 2009, Plaintiff and Yafit entered a new contract giving Yafit 50% of the apartment and of any chattels in Israel (such as cars) with the formula for compensation for carrying children in the womb stayed the same.

42. On September 27, 2018, Yafit filed a demand to place a lien on Plaintiff's 50% ownership of the apartment (100%=6,700,000 NIS = $1,950,000), and it was granted *ex parte*. Thus, Yafit already had securities for any alleged debt to her of $975,000 (half the apartment and $47,500 (half of the Volvo) totaling $1,022,500. In any "normal" court where extortion is not the norm, no Judge in his sane mind would

have asked any more bonds to secure free exits and entries into the country, especially when the entries are for the purpose of attending trials.

43. On July 7, 2019, at the courtroom of Defendant Ofek Plaintiff and Yafit made an addendum to the contract stating that the compensation of $100,000 per child shall be extended to include any additional children born after the second child at the same rate of $100,000 per child. Nowhere in any of these contracts was there a stipulation that the $100,000 per child shall be multiplied by the number of years in marriage.

44. The contract was presented to Defendant Sigalit Ofek for Court approval. This defendant knew that Plaintiff doesn't speak Hebrew and there was no translator in court, nor was the contract translated. She approved the contract addendum and ordered that a translation will be sent to Plaintiff sometime later.

45. On May 8, 2020, Yafit filed for divorce and immediately moved the court for a no exit order. She claimed that the contract is open to interpretation that Plaintiff "wanted" and "intended" to pay Yafit the sum of $100,000 per child multiplied by the number of years in marriage (12), and that according to her interpretation the amount of $100,000 must be multiplied by 36 (a multiplication of 12 years of marriage multiplied by 3 children), resulting in a demand of 15,000,000 NIS ($4,400,000).

46. On May 18, 2020, Defendant Meshulam ordered that Plaintiff must pay 840,000 NIS ($250,000) in order to be free and to be able to leave Israel.

47. Only one year later May 31, 2021, upon a motion of Plaintiff that took 6 months to be decided Defendant Meshulam agreed to lower the ransom to 350,000 NIS ($105,000), but Yafit appealed and on July 20, 2021, Defendant Ofek decided that Plaintiff must post this amount of 350,000 NIS in the Court and an extra amount of 115,000 NIS in the Executions Authority. That's pure extortion.

48. In July-August 2021 Yafit moved to block any account belonging to Plaintiff from receiving any money from abroad so he cannot actually survive. Plaintiff's mother redeemed all her pensions in order to send the rescue money, and when the problem was solved, Plaintiff was able to leave Israel on September 5, 2021.

49. On September 14, 2021, Yafit was cross examined about the "contract interpretation" of 15,000,000 NIS. She was not able to show anywhere in the contract how she can multiply the $100,000 by the 12 years in marriage. Also, the lawyer who drafted the contract Ms. Leah Lee testified and was cross examined. She vehemently said that Yafit and her lawyer are blatantly wrong, the contract was not open to any interpretation and that the compensation per the contract id only $100,000 per child.

50. On December 7, 2022, Defendant Ofek decided to give Yafit a chance to resurrect her collapsing complaint by summoning Yafit's own lawyer, Ms. Ruth Dayan Wolfner to testify about the contract interpretation. Ms. Dayan Wolfner was scheduled to testify on December 14, 2021.

51. In the few days before testimony, December 10-13, 2021 Defendant Ofek issued orders that Plaintiff cannot cross examine Yafit with any question about her demand for 54,000 NIS ($4,400) per month in child support, that he cannot summon witnesses from his side, denied the motion to have his mother testify about the source of the rescue money she sent to rescue her son, and denied his motions to set meeting with his children during the trip, and conditioned it on paying a psychologist to supervise meetings with the children. Per each of the 4 decisions Ofek also ordered Plaintiff to pay Yafit 3,000 NIS ($910) for a total of $3,640. This is customary in Israel to slap a series of attorney fees in favor of women to achieve 2 goals: so that the woman can use it at the Bailiffs to issue a no exit and other levies and liens, and to scare the man from making any applications to this Judge.

52. On December 9, 2021, Plaintiff started making the trip to Israel that lasted 36 hours (due to scarce flights during the Covid pandemic) and entered Israel 2 days before the date of trial. When he booked the ticket the quarantine in Israel was just a few hours until receiving results of covid test from the airport.

53. However, overnight the Omicron started to spread, and the quarantine changed to 3 days. Plaintiff did not know that.

54. On December 14, 2021, Plaintiff did appear before Defendant Ofek in her courtroom, Yafit's lawyer Wolfner called police to check if Plaintiff is subject to the new 3-day quarantine for Omicron. Defendant Ofek ordered the police to take

Plaintiff out of the Courtroom, decided that Plaintiff shall be deemed as if he failed to appear, ordered Plaintiff to pay 40,000 NIS ($11,600) in attorney fees to Yafit and granted a default judgment in her favor which means that Plaintiff owes her the 15,000,000 NIS per the marital contract and 54,000 NIS in child support per month, plus 50% of all sorts of charges.

55. On December 15, 2021, as expected Yafit ran to Defendant Akuka at the Executions office and asked again to issue a no exit so that Plaintiff's body serves as collateral.  Luckily Plaintiff was already on the plane to safety overseas and saved his life.

56. On December 16, 2021, Defendant Akuka decided to release the 115,000 NIS bank guaranty that Plaintiff filed so he can exit and enter safely to Yafit so that she can pay the court fee of 150,000 (1% of her claim) after she got a judgment, even though that payment was due to the Court clerk on August 20-, 2020.  Thus, it turns out Plaintiff's own money paid the court fee for the concocted and bogus 15-million-shekel claim.

57. On February 9, 2022, Defendant Ofek denied a motion to vacate the default judgment, stating that it was not a default judgment.

58. On May 19, 2022, Plaintiff made a motion to appear by video conference in a pre-trial conference set for May 29, 2022.  He explained at length that during the Corona all court granted freely requests to appear by video conference, and that coming to Israel to attend a pre-trial conference would mean he will never be able to get out of Israel alive.  On May 19, 2022, Defendant Ofek denied this motion saying that he must enter and take the risk, because it is legitimate ion Israel to hold bodies of foreigners as collateral for non-payment of FUTURE child support.

59. Since Plaintiff left Israel on September 5, 2021, he lost all contact with the children, and Defendant Ofek refused to take any steps against Yafit.  This was done, as a customary extortionist tool is Israel to help the wife alienate the children with the hope the father caves in and gives up all his properties.

60. Also, Defendant Ofek refused to set dates for conferences and trial in Plaintiffs counterclaims to equitably distribute the marital apartment and Volvo and refused to appoint a receive on the allegation that the counter-complaint is useless because considering the interpretation of the contract that plaintiff may owe 15,000,000 NIS, it will swallow up all value in the apartment and Volvo belonging to Plaintiff. See Decision Dated May 3, 2021.

61. This proves that in the jurisdictional extortion trap of Israel, the man has no chance for even reaching a trial on his complaints and counterclaims, because the extortionist Judge (in this case Defendant Ofek) can simply lay the complaint dormant indefinitely. There are no remedies, no outlets, and no way around the extortion.

62. On May 12, 2022, Defendant Naftali Shilo at the District Appellate court denied the motion to suspend proceedings pending an appeal. And found nothing wrong with the conduct of his fellow extortionists Ofek, Meshulam or Akuka.

## FIRST CAUSE OF ACTION

### racketeering activity

63. Plaintiff repeats and realleges all paragraphs above as if fully set forth hereat.

64. The Defendants have devised a "racketeering activity" that is nefarious, illegal and in violation of the laws of nations, in specifically targeting victims such as the Plaintiff who are male, non-Israelis by origin and are or were married to Israeli women means in order to extort them and rob them out of everything they own, including robbing them of the fatherhood, and turning them into slaves for life of the Israeli extortionist system.

65. As explained the extortion is committed by taking advantage of the fact that the jurisdiction of the state of Israel can quickly become a death trap to any such targeted victim who dares to enter Israel to "defend" his rights in the notorious courts where every single legal process is rigged in favor of women, with zero chances of obtaining a shred of due process or equal protection of the law.

66. As can be seen in Plaintiff's case, even the most ridiculous claim that a contract that specifically states sum certain for compensation ($100,000 per child) is open to "interpretation" that a factor nonexistent in the contract (a multiplication of the number of years in marriage) can be easily inserted into the cause of action, solely on the basis of the woman's "say so". Not a single Judge or Magistrate paused for a single minute to look in the contract and see what is the formula for the womb carrying compensation, before Plaintiff was held hostage for 14 months in Israel living like a dog and faced with enormous ransom amounts.

67. There isn't a single case in the entire corpus of cases in Israel that protects a man coming from overseas to attend a trial or hearing, from not being able to return to his home and loved ones overseas.

68. In fact, it is just as easy for a woman to win such bogus claims (that are per se extortionist claims) by default, when all the women must do is fill in a new page form and request the lock in of the man in Israel under a no exit order.

69. The US Department of State is well aware of this judicial and extortionist judicial trap and for many years it posted a travel advisory to all American men contemplating travel to Israel when the family relations is shaky, to be fully aware of the risk that the US cannot help them if they eventually get trapped in a no exit proceeding.

70. See the US DOJ Travel Advisory to Israel:



71. Beginning in May 10, 2020 and continuing into the foreseeable future the defendants, jointly or severally committed against Plaintiff acts of extortion and illegal detainer of his body as collateral (by holding Plaintiff hostage in Israel under a bogus no exit order) and a subsequent extortion of the Plaintiff by demanding that he return to Israel, or face a default judgment, and if he does return he shall risk long loss of freedom of movement, and possibly never be able to get out for life.

72.    In the past 25 years these defendants and many other judges in Israel who follow the directives of the radical feminist acts have committed the same acts of extortions in a systematic, calculated, and malicious way targeting approximately 2,000 foreign men married to Israeli women every year.

73. For example, in Haifa Judge Hila Gurevich extorted the father Avraham Herssein that she would dismiss his Hague Abduction of Minors case if he does not travel from Nebraska to Israel. While he attended the hearing on July 21, 2021, a no exit order was issued against him, and he was required to post a 190,000 NIS ($55,000) bond to leave Israel.

74. In March 2022 after living 8 months in poverty and with no income and one suitcase he brought from Nebraska, he was so desperate to gain his freedom, he ran through a minefield risking his life into Jordan. The US Embassy in Amman was notified in advance but refused to send any Consul to inspect the procedure of his capture by Jordan Border Patrol. The Israeli Government demanded his return to Israel, and the Jordanians complied, instead of taking him to an airport to return to the USA.

75. After a fundraising in the USA to raise the ransom sum of $55,000 he paid in April 2022 the sum, returned to Nebraska, only to receive by email another demand that he appears in Israel before Gurevich on June 8, 2022, under the treat that his wife will win a judgment by default. Here, the wife did not even wait for his arrival. Two days before the trial date on June 6, 2022, she already filed for a no exit, both to deter him from coming and get a default, and in the odd chance he will be brave enough, to make sure the no exit kicks in early so he wouldn't be able to slip out of Israel.

Plaintiff asked for appearance by video, but Judge Gurevich denied it saying that she will not deprive a woman from her right to lock in the husband as hostage in Israel.

76. Same thing happened to another gay father who lives in Miami. The lesbian mother who lives in Israel filed a libel claim in the family Court in Rishon LeZion. Judge Mirit Polus allowed her to serve summons extraterritorially to Miami via email and upon notice of 7 days demanded that this father (who also has 2 children in Miami) show up before her or risk a default judgment, knowing full well that the mother in Israel is anxious to lock him in as hostage the moment he sets foot in Israel.

77. Another father who has been tormented by Judge Ayelet Golan-Tavori also in Rishon LeZion family Court managed to escape Israel and save his life. He arrived in France and received a Refugee status. Judge Dolan Tavori threatened to give all the property he left behind to his wife if he does not return to Israel and denied his application to attend by video. This case was decided on October 23, 2011, Case 32520-09.

78. The fact that this same pattern existed already 11 years ago, and that in that case the Judge refused to honor the UNHCR Refugee Convention 1951 by demanding that a refugee return to the country that persecuted him, shows a pattern of extortion. This satisfied the continuity requirement of **H.J., Inc. v. Northwestern Bell Telephone Co.**, 492 U.S. 229 (1989).

79. This pattern of continuing racketeering will continue well into the future as there are no signs that any of the Defendants (especially Hayut who has the power to change all this) will suddenly change their adherence to the feminism cult.

80. These acts of racketeering and extortion satisfy the Interstate Commerce Requirement as the targets, Plaintiff and other fathers and men similarly situated are outside the State of Israel but they are dragged into the quagmire and shenanigans of the Defendants and their tactics involuntarily and naively, thereby affecting their property in Israel, and once a Judgment of default is entered against them, then the defendants use the multiple international cooperation and mutual recognition conventions to chase them down to their foreign addressed.

81. Defendants' calculated pattern of racketeering is based on the following predicate acts:

a.  Predicate acts based on § 1341 (relating to mail fraud) and § 1343 (relating to use of wires):  The mail and wire fraud statute (18 U.S.C. §§ 1341, 1343) makes it criminal for anyone to use the mails or wires in furtherance of a scheme to defraud or to extort. The fraudulent and/or extortionist statements themselves need not be transmitted by mail or wire; it is only required that the scheme to defraud be advanced, concealed or furthered by use of the U.S mail or wires.

The Defendants mailed by email to Plaintiff the decisions that set up the trap in Israel, threatening him that if he does not travel to Israel under the risk of being locked in the country indefinitely, his assets will be confiscated and turned over to his wife and sanctions can be imposed in favor of the Israel Treasury.  That satisfies the use of mail and wires to perpetrate extortion. Further, it was done in interstate or foreign commerce for the purpose of executing such scheme of extortion  to deprive Plaintiff and other men similarly situated (Americans and non-Israelis) of the intangible right of honest services.

b.  Predicate acts based on section 1503 (relating to obstruction of justice): Defendants, alone or in conspiracy corruptly, or by threats or force, or by any threatening letter or communication, endeavored to influence, intimidate, or impede proceedings in the United States Court of Claims where Plaintiff is suing to recover seized merchandise (by manufacturing a judgment created by extortion in Israel that would levy on the products of the litigation), and take his personal property by threats or force, or by any threatening letter or communication, influenced, obstructed, or impeded, or endeavored to influence, obstruct, or impede, the due administration of justice.

c.  Predicate acts based on section 1513 (relating to retaliating against a witness, victim, or an informant):  Defendants knowingly engaged in conduct that is extortionist by locking Plaintiff in Israel for 14 months, restricting his liberty

17

and livelihood and after his exit threatening him that he must return to be cross examined and risk another indefinite period of State wide lock in, caused bodily injury to Plaintiff or damaged the tangible property of Plaintiff, or threatened to do so, with intent to retaliate against Plaintiff for his the attendance or testimony which Ofek requires him to give in person. Needless to say that after Corona, testimony by video has been readily available to any litigant or witness, except fathers and men in family courts.

d. Predicate acts based on section 1951 (relating to interference with commerce, robbery or extortion): Defendants have obstructed, delayed, or affected commerce or the movement of any article or commodity in commerce, by robbery (as defined" "unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining) or extortion (as defined: "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right") or attempted or conspired so to do, or committed or threatened physical violence to Plaintiff or property in furtherance of a plan or purpose to do anything in violation of 18 USC § 1951 by preventing Plaintiff exiting Israel to complete transactions originating from China and intended for consummation in the US, in Dallas, and other points of redemption in the US.

e. Predicate acts based on section 1952 (relating to racketeering); the defendants committed "unlawful activity" as defined in 18 USC § 1952 (b)(2) including "extortion" in violation of the laws of the State or the laws of the US (which include the constitution, Due Process, Equal Protection and international human rights treaties) in interstate or foreign commerce or using the mail or any facility in interstate or foreign commerce, with intent to distribute the proceeds of the unlawful activity (the extortion of 15,000,000 NIS) to Yafit or commit any crime of violence to further any unlawful activity; or otherwise promote, manage, establish, carry on, or facilitate the promotion, management,

18

establishment, or carrying on, of any <u>unlawful activity</u>, and thereafter performs or attempts to perform an act described above.

82. By reason of the foregoing the defendants caused Plaintiff injuries and damages due to the commission of one or more of the predicate acts defined by 18 U.S.C. §1961(1), (the definition of racketeering activity) and given that plaintiff was the intended target of that defendant's conduct, he suffered damages and Plaintiff is entitled to judgment in the amount of

a.  15,000,000 NIS ($4,400,000) based on the bogus interprepration of the marital contact and the Judgment Defendant Ofek rendered on December 14, 2021,

b.  54,000 NIS X 12 months X 15 years = 9,720,000 NIS ($3,000,000) in bogus "child support" granted in the Judgment Defendant Ofek rendered on December 14, 2021,

c.  Lost businesses during 14 months of no exit in the amount of 1,400,000 NIS ($430,000) based on the monthly earning that Defendant Ofek cited on the record of 100,000 NIS per month

d.  Pain, suffering and aggravation in the amount of $500,000 to cover 14 months of illegal state-wide lock in and no exit and the humiliation of being a victim of sex-based discrimination and a victim of extortion and torture.

e.  Loss of 465,000 NIS ($140,000) filed in Israel in order to leave it on September 5, 2021

f.  Attorney fees of 350,000 NIS ($106,000) in attorney fees paid to Nechama Zibin attorney and Ronen Dlayahu attorney to fight the bogus claim and fight the no exit.

83. The aggregate sum of the damages is $8,576,000 against all defendants, jointly and severally, for compensatory damages.

## SECOND CAUSE OF ACTION
## CRIMES AGAINST HUMANITY

84. Plaintiff repeats and realleges all paragraphs above as if fully set forth hereat.

85. The conduct of defendants violated international standards of human rights, as incorporated into US Courts via UN international covenants and conventions on human rights, the equivalent of Due Process and Equal Protection) by inflicting discrimination based on Plaintiff's gender as a man, locking him up in Israel for 14 months without a home or ability to work, throwing him out of his home, seizing his car. Liening his real estate ownership, denying all his complaints for relief, allowing his ex wife to extort him with a bogus claim, applying judicial extortion by demanding astronomical amounts of ransom, and upon his exit extorting him that if he does not return, everything he owns will be lost and he will lose any contact with his 3 children forever.

86. These extortionists Defendants with black robes applying "justice" under the teachings of the worst ultra radical feminists ideologists are no different than the genocidal racist "justice" dispensed in Nazi Germany last Century. The Nazis tormented and tortured to death Jews because they are Jews. The Israeli officials Defendants are doing the same thing, perpetrating a holocaust on any Jew who is male, just because he is a man.

87. Plaintiff has no chances of obtaining justice or avoiding the ring of extortion because Defendants made sure no targeted man can escape their wrath anywhere in the world via a network of international reciprocity treaties.

88. Plaintiff and all those Jewish men similarly situated (non-Israelis) can get justice and fairness from Defendants like Sigalit ofek, in the same way anna frank had a chance to Petition Joseph Mengele on the ramps of Auschwitz to get a return ticket on the next train back to Amsterdam.

89. The conduct of defendants constitutes crime against humanity and a perpetration of a modern holocaust in the name of the cult of "feminism". They

knowingly, willingly and maliciously violated the laws of all nations and *jus cogens*. Their conduct has been outrageous, shocking, repugnant and abhorrent.

90. Plaintiff is entitled to invoke the Alien Tort Claims Act and the TVPA **(Trafficking Victims Protection Act** of 2000).

91. By reason therefore Plaintiff is entitled to judgment for his damages in the amount of $8,576,000.

**THIRD CAUSE OF ACTION**
**<u>NEGLIGENCE AGAINST NEFESH b'NEFESH</u>**

92. Defendant Nefesh b'Nefesh invests hundreds of millions of dollars every year on campaigns to lure Jews from Anglo speaking countries to immigrate to Israel. They represent Israel as a modern, lively, friendly and democratic.

93. They clients are not informed about the true nature of the destination "Israel" a vicious, brutal, violent and corrupt country with a corrupt legal system that does not follow any international standards and deprives men of anything they own, as soon as the wife wishes to "dump" the man (just like trash) when the divorce starts.

94. Defendant Nefesh b'Nefesh was negligent in failing to make such disclosures about the real face of Israel.

95. Had it been disclosed Plaintiff would have never married an Israeli woman would never immigrate to Israel and would never voluntarily put himself directly in the "mouth of the beast" that wants to eat him alive.

96. Defendant Nefesh b'Nefesh materially deviated from the standard of professionalism among immigration and relocation marketers.

97. But for Defendant Nefesh b'Nefesh negligence and misrepresentations Plaintiff would not have suffered the $8.5 Million in damages.

98. As a proximate result of one or more of these intentional acts or omissions, Plaintiff sustained $8.5 Million.

## 4th CAUSE OF ACTION
## RICO CLAIM V. RUTH HALPERIN KADDARI

99. Defendant Kaddari runs a separate and independent network of extortion, deception and misrepresentations from the other codefendants but the two rings are intertwined and cross fertilize each other.

100.    Defendant Kaddari is the head of what's called the "Rackman Center" in Ramat Gan Israel, which sits inside an academic University, the Bar Ilan University, although it has nothing to do with academics, teaching and studying and it has no students.

101.    Rather, it is a propaganda center for male hate mongering, empowering women at the expense of men's rights, and is devoted to spreading vicious and poisonous campaigns, funded by donations raised in the USA via the "American Friends of Bar Ilan nonprofit, based in 4 locations in the USA.

102.    It is also the center where all proposed legislation that discriminates against men is drafted, passed on to the members of parliament (Knesset) and to the Ministry of Justice, all of them designed to rob men out of their property, disengage the fathers from children and enhancing the extortion tool that women have in Israel (and are unparalleled in any other country). These are coupled with massive and extensive brainwashing propaganda in the news, media, posters in city streets, lobbying and threats to unleash the powers of negative publicity on anyone who dares raised a question.

103.    Kaddari and her Rackman Center firmly believe and extensively advocate the notion that only men are violent in a man-woman marital relationship, a woman can never be held accountable to violence, and that all Jewish men ae ticking bombs that just want to kill and murder their wives.

104.     Kaddari and her Rackman Center firmly believe and extensively advocate the notion that women should never pay child support, should always be exempt from prosecution for filing false police complaints, and that custody should always be with the mother with full veto powers to block and screen the husband's level of contact with their children.

105.     Kaddari and her Rackman Center firmly believe and extensively advocate the holiness of the "Ketubah", a religious instrument whereby the man buys the sexual services of the woman at the celebration of divorce.  They portray all women as sex slaves up sold for the highest bidder for the price of the Ketuba, which can run beyween tens of thousands of dollars to hundreds of thousands of dollars.

106.     Kaddari and her Rackman Center firmly believe and extensively advocate publicity campaign such as the following, which depicts women in military commando gear against men:

107.     Kaddari and her Rackman Center misrepresent to the Jewish federations in the USA that women have no rights in Israel, that women are being killed by Jewish husbands every day, left and right, that Israel is a dangerous place for women to live, and that upon divorce the women are the ones being discriminated against and that the women lose property and rights, when the truth is exactly the opposite.

108.     The financial instrument that sends donations from Jewish communities in the USA is the American Friends of Bar Ilan located in NYC and 4 other US centers.  They are being deceived by the false statements of Defendant Kaddari.

109.     In this campaign the mothers are dressed in military commando outfits as if they are at war with men, and the slogan is "Come to us, Let us fight for you to get you the child support you deserve".

110.     See the official poster and flier:



111.    See also the video clip that aired on tv as uploaded by the employer of Defendant Lauren Akuka to Youtube at: https://youtu.be/aSEYrroz-x8/



112.    This is a visual proof that the Israeli Defendants declared a war on the Jewish men of Israel. However explicit admissions in writing and in English can be

found in the Israeli periodic reports to the UN Committees on Civil and Political Rights and the UN Committee on Economic Social and Cultural Rights. Already in 2011 the latter Committee admonished Israel for not complying with international laws and standards by giving automatic custody to women, exempting women from child support and imposing an enormous burden on the men, and not taking measures to prevent more than 200 cases of suicide by men in divorce or divorce proceedings.

113.    The rules of this war *(Jus ad Bellum)*, that Defendant Kaddari is feeding into all elements of Israeli society, succinctly are:  only the man pays child support.  A woman never has to pay child support because she belongs to the superior sex, no matter how rich of wealthy she is.  A man has to pay full child support even if he is the custodian of the children and the woman travels the world to pursue sexcapades.  A man also has to pay the one third of the woman's rent and rent maintenance wherever she chooses as "child support".  A man is also expected to pay "caretaking fee" when the woman needs a babysitter.

114.    Only the man pays for the transportation costs of visitations and gas. The child support never stops, even if the man is sick, crippled, army veteran in PTSD, in bankruptcy, in jail, in hospital, in mental facility, suffering from terminal cancer, about to die or incapacitated, the child support never stops.  The woman can also sue the parents of the man if he is unable to pay her in full or in part.

115.    More rules of the war are:  the child support is not dependent on the man's income, and the income has nothing to do with child support.  In fact, there is no problem to impose child support exceeding the income, even twice or three times the income.  The child support begins at a fixed sum of 1,400 NIS per child (not including school tuitions including private schools and kindergarten, and 50% of extraordinary expenses such as medical and dental not covered by insurance, etc.) All the add-ups amount to about 2,200-2,500 NIS ($600-$675 per-child.  Unlike other countries were the amount escalates moderately with additional children, the fee is fixed and is multiplied per child.

116.    This is in a country with 50% of the population earns minimum wage which is 5,500 NIS (about $1,500), and you cannot rent a studio for less than 2,500

NIS ($675), and the minimum incidentals (city tax, building common fees, electricity, water and gas) are at least another 1,000 NIS ($270).

117.    Assume that a man earns 5,500 NIS ($1,500) and he has 3 children, he will have to pay at least 7,500 NIS ($2,020) in child support. Where will that person live and how will he be able to afford the $520 shortfall? Some judges in Israel had no shame telling the men in the courtroom to "go ahead sell a kidney".

118.    The situation at the Execution and Collections Authority where Defendant Akuka worked can only be described as an inferno. A woman is allowed to open a collection case even if she is owed $0. She can issue a no exit order immediately, thus using the body of a man as collateral for "future child support". Also, immediately usurious rates of interest start accumulating on a compounded basis together with cost of living adjustment so that the child support base always go up faster than anyone can imagine. Not soon thereafter all pension funds are liquidated, all bank accounts are seized, credit cards forbidden, driving license not renewed, and then come the mandatory 21 days in jail, whenever the wife wants to abuse her former husband a little bit more.

119.    Defendant Kaddari is responsible for all this extortion, mass torture of men and mass robbery of men, by taking donations from the gullible American donors and spending their money to create an inferno for Jewish men in Israel.

120.    It is estimated that Kaddari and her Rackman Center are responsible for the deaths of 300-500 men every year (by suicide or otherwise) because of the hate propaganda emanating from her campaigns. It can only be compared to the Nazi propaganda that depicted Jews as rats in the sewer.

121.    The actions and campaigns of Defendant Kaddari were directed and targeted against Plaintiff and men similarly situated, and indeed it succeeded in causing Plaintiff the damages described above.

122.    As a proximate result of one or more of these intentional acts or omissions, Plaintiff sustained $8.5 Million.

**WHEREFORE**, By reason of the foregoing the defendants caused Plaintiff injuries and damages due to the commission of one or more of the predicate acts defined by 18 U.S.C. §1961(1), (the definition of racketeering activity) and given that plaintiff was the intended target of that defendant's conduct, he suffered damages and Plaintiff is entitled to judgment in the amount of (a) 15,000,000 NIS (S4,400,000) based on the bogus interpretation of the marital contact and the Judgment Defendant Ofek rendered on December 14, 2021, (b) 54,000 NIS X 12 months X 15 years = 9,720,000 NIS ($3,000,000) in bogus "child support" granted in the Judgment Defendant Ofek rendered on December 14, 2021, (c) Lost businesses during 14 months of no exit in the amount of 1,400,000 NIS ($430,000) based on the monthly earning that Defendant Ofek cited on the record of 100,000 NIS per month, (d) Pain, suffering and aggravation in the amount of $500,000 to cover 14 months of illegal state-wide lock in and no exit and the humiliation of being a victim of sex based discrimination and a victim of extortion and torture, ( e) Loss of 465,000 NIS ($140,000) filed in Israel in order to leave it on September 5, 2021, (f) Attorney fees of 350,000 NIS ($106,000) in attorney fees paid to Nechama Zibin attorney and Ronen Dlayahu attorney to fight the bogus claim and fight the no exit, in the aggregate sum of the damages is $8,576,000 against all defendants, $6,000,000 in punitive damages for a total of $14,576,000 jointly and severally, for compensatory damages, plus costs and disbursements.

Dated:  Allen, Texas
       July 18, 2022

Ron Shahar, Plaintiff pro se
405 Club House Dr.,
Allen, TX 75002
Tel. +1-626-348-9744
Email: shahar_ronnie@hotmail.com

To:

Sigalit Ofek, 20 Yosef Zvi Street, Ramat Gan, Israel.
Naftali Shilo, 562 Hagefen St, Efrata, West Bank, Israel 9044613
Nefesh b'Nefesh, 7800 Northaven Rd, Dallas, TX 75230, USA tel, 1-214-369-3313
Einat Meshulam, 7 Hillel Yafe St., Hadera Israel 3820310.
Lauren Akuka, 1 Weitzman Street, Tel Aviv Israel.
Gideon Saar, 29 Tzalach A din St., Jerusalem Israel
Esther Hayut, 23 Yonatan Street, Tzahala, Tel Aviv Israel.

Ruth Halperin Kaddari, 60 East 56th Street, New York, NY 10022, Tel 1-212-906-3900