**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| RON SHAHAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:22-CV-00632- |
| | § | SDJ-AGD |
| SIGALIT OFEK, ET AL., | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the court is Defendant Sigalit Ofek, Naftali Shilo, Nefesh B'Nefesh, Einat Meshulam, Lauren Akuka, Gideon Sa'ar, Esther Hayut, and Ruth Halperin-Kaddari's (collectively, "Defendants") Joint Motion to Dismiss (Dkt. #32). Plaintiff Ron Shahar ("Plaintiff"), proceeding *pro se*, filed a Response to Defendants' Motion to Dismiss (Dkt. #42), and Defendants filed a Joint Reply to Plaintiff's Response (Dkt. #43). After reviewing the Motion, the applicable response and reply, and all other relevant filings, the court recommends Defendants' Joint Motion to Dismiss (Dkt. #32) be **GRANTED** as set forth herein, and Plaintiff's Complaint be **DISMISSED**.

**BACKGROUND**

On July 25, 2022, *pro se* Plaintiff Ron Shahar ("Plaintiff") filed the instant cause against Defendants (Dkt. #1). Plaintiff asserts his "complaint is based on 18 U.S.C. § 1962(c)" ("RICO") (Dkt. #1 at ¶ 6), yet he alleges four distinct causes of action: (1) a RICO claim against all Defendants; (2) Crimes Against Humanity committed by all Defendants; (3) a negligence claim against Defendant Nefesh B'Nefesh; (4) and a RICO claim specifically against Defendant

Halperin-Kaddari (Dkt. #1 at pp. 13, 20, 21, 22).[1] On October 5, 2022, the court sent Plaintiff a Notice of Impending Dismissal allowing him until October 24, 2022, to show proof of service (Dkt. #13). On October 25, 2022, Plaintiff filed Proof of Service forms for the eight Defendants (Dkt. #14–21). On November 14, 2022, Defendants filed a Corrected Joint Motion to Extend Time to Respond to Complaint (Dkt. #27), which the court granted on November 17, 2022 (Dkt. #31). Defendants filed their Joint Motion to Dismiss on January 13, 2023 (Dkt. #32). On January 23, 2023, the court ordered Plaintiff to file a response to Defendants' Joint Motion to Dismiss no later than February 3, 2023 (Dkt. #33). Plaintiff requested two separate extensions of time to respond to Defendants' Motion;[2] Defendant Nefesh B'Nefesh's counsel filed a response to each motion for extension noting Plaintiff's failure to confer;[3] and the court granted the two extensions.[4] Plaintiff filed a response to Defendants' Joint Motion to Dismiss as a "Declaration of Plaintiff in Opposition" on May 5, 2023 (Dkt. #42),[5] and Defendants filed a Joint Reply on May 12, 2023 (Dkt. #43).

*Plaintiff's Complaint – The Live Pleading*

Plaintiff asserts four causes of action against Defendants that stem from divorce proceedings filed by Plaintiff's ex-wife in Israel and the judgments levied against him: (1) a RICO claim against all Defendants; (2) Crimes Against Humanity committed by all Defendants; (3) a

---

[1] While Plaintiff alleges these four specific causes of action, he also references a litany of statutes he asserts the Defendants have violated, which include: 18 U.S.C. § 1349 ("Mail Fraud–Conspiracy"); 29 U.S.C. § 206 ("FLSA–Minimum Wage"); 18 U.S.C. § 1341 ("Mail Fraud–Frauds and Swindles"); 13 U.S.C. § 1343 ("Mail Fraud–Wire Fraud"); 29 U.S.C. § 216 ("FLSA–Penalties"); 42 U.S.C. § 1983 ("Civil Action for Deprivation of Rights"); "the First and Fourteenth" (presumably Amendments of the United States Constitution, but Plaintiff did not specify) (Dkt. #1 at p. 5). Each of these is listed under "Jurisdiction and venue" in Plaintiff's Complaint to establish federal question jurisdiction under 28 U.S.C. § 1331; however, unless specifically addressed under one of Plaintiff's four causes of action, the court does not opine on these statutes.
[2] Dkt. #34, filed on February 2, 2023; Dkt #39, filed March 23, 2023.
[3] Dkt. #35, filed on February 13, 2023; Dkt. #40, filed on April 4, 2023.
[4] Dkt. #36, entered March 20, 2023; Dkt. #41, entered on April 4, 2023.
[5] The court notes that, while Plaintiff missed every deadline set by the court, *pro se* plaintiffs are given more leeway than represented parties. *Simmons v. Methodist Hosp. of Dallas*, 106 F. Supp. 3d 799, 803 (N.D. Tex. 2015), *aff'd*, 632 F. App'x. 784 (5th Cir. 2015).

negligence claim against Defendant Nefesh B'Nefesh; (4) and a RICO claim specifically against Defendant Halperin-Kaddari (Dkt. #1 at pp. 13, 20, 21, 22).

### A.    RICO Allegation Against Defendants

Plaintiff alleges that "Defendants have devised a 'racketeering activity' that is nefarious, illegal and in violation of the laws of nations," and Defendants "target[] victims" who are non-Israeli men who married Israeli women with the specific intent to "rob them out of everything they own, including . . . fatherhood, and turning them into slaves for life of the Israeli extortionist system." (Dkt. #1 at ¶ 64). Plaintiff alleges the racketeering activity was committed by Defendants Ofek, Shilo, Meshulam, Akuka, Sa'ar, and Hayut (current and former judiciary officials in Israel) ("Israeli Judicial Officials"), Defendant Halperin-Kaddari (a professor of family law, feminist jurisprudence, and bioethics at the Bar-Ilan University in Israel), and Defendant Nefesh B'Nefesh (a nonprofit organization promoting immigration to Israel) (Dkt. #32 at p. 12; Dkt. #1 at ¶¶ 9–16). Plaintiff alleges these Defendants "extort" men through the implementation of a "legal process . . . rigged in favor of women, with[out] . . . a shred of due process or equal protection of the law" (Dkt. #1 at ¶ 65). Plaintiff alleges Defendants "jointly or severally committed against Plaintiff acts of extortion and illegal detainer of his body as collateral" (Dkt. #1 at ¶ 71).

Plaintiff alleges predicate acts for the RICO activities include: (1) 18 U.S.C. §§ 1341, 1343, for wire fraud because Defendants reached out to Plaintiff via email (Dkt. #1 at ¶ 81.a); (2) 18 U.S.C. § 1503 for obstruction of justice because Defendants are "imped[ing] proceedings in the United States Court of Claims where Plaintiff is suing to recover seized merchandise" (Dkt. #1 at ¶ 81.b); (3) 18 U.S.C. § 1513 for retaliating against a witness when "Defendants knowingly engaged in conduct that is extortionist" (Dkt. #1 at ¶ 81.c); (4) 18 U.S.C. § 1951 for interfering with commerce by threats or violence when Defendants "prevent[ed] Plaintiff from exiting Israel

to complete transactions originating from China and intended for consummation in the US" (Dkt. #1 at ¶ 81.d); and (5) 18 U.S.C. § 1952 for interstate and foreign travel or transportation in aid of racketeering enterprises, a claim for which Plaintiff alleged no actions of the Defendants (Dkt. #1 at ¶ 81.e).

### B.     Crimes Against Humanity

Plaintiff alleges Defendants violated United Nations covenants by engaging in sex discrimination, enforcing adverse judgments, and engaging in the Israeli judicial process (Dkt. #1 at ¶ 85). Plaintiff avers Defendants are "extortionists . . . with black robes applying 'justice' under the teachings of the worst ultra radical feminists [*sic*] ideologists" (Dkt. #1 at ¶ 86). Plaintiff stated that Defendants' "conduct has been outrageous, shocking, repugnant, and abhorrent" (Dkt. #1 at ¶ 89).

### C.     Negligence Against Defendant Nefesh B'Nefesh

Plaintiff contends Defendant Nefesh B'Nefesh, a nonprofit organization that promotes immigration to Israel, is negligent in its advertising because it "represent[s] Israel as [] modern, lively, friendly, and democratic" (Dkt. #1 at ¶ 91). According to Plaintiff, had Defendant Nefesh B'Nefesh not deviated from a standard of professionalism, Plaintiff never would have immigrated to Israel (Dkt. #1 at ¶¶ 94–97).

### D.     Defendant Halperin-Kaddari's RICO Activity

Plaintiff claims Defendant Halperin-Kaddari "runs a separate and independent network of extortion, deception and misrepresentations from the other [Defendants]," but Defendant Halperin-Kaddari's racketeering enterprise is connected (Dkt. #1 at ¶ 99). Plaintiff alleges that Defendant Halperin-Kaddari's Rackman Center for the Advancement of the Status of Women at Bar-Ilan University "is a propaganda center for male hate mongering, empowering women at the expense

of men's rights, and is devoted to spreading vicious and poisonous campaigns" (Dkt. #1 at ¶¶ 99–122).

As for the injuries alleged, Plaintiff contends he suffered actual damages in the amount of $8,576,000.00 and requests punitive damages in the amount of $6,000,000.00, for a total damage amount of $14,576,000.00 (Dkt. #1 at p. 27).

### *Defendants' Joint Motion to Dismiss Plaintiff's Complaint*

Defendants contend that (1) Israeli Judicial Officials are immune from Plaintiff's suit (Dkt. #32 at pp. 14–18); (2) the court lacks personal jurisdiction over each Defendant due to lack of service of process and lack of minimum contacts with the forum (Dkt. #32 at pp. 18–25); the Complaint fails to state a claim upon which relief can be granted (Dkt. #32 at pp. 25–36); and that the Complaint is barred by doctrines of act of state and international comity (Dkt. #32 at pp. 36–37). Defendants ask that Plaintiff's Complaint (Dkt. #1) be dismissed in its entirety, with prejudice (Dkt. #32).[6]

## LEGAL STANDARD – FOREIGN-POLICY ABSTENTION DOCTRINES

The official acts of a foreign sovereign are typically afforded immunity in United States state and federal courts. 28 U.S.C. § 1604 ("Subject to existing international agreements to which the United States is a party at the time of enactment of this Act[,] a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.").[7] This immunity applies to official state actors acting in their official capacity. *See Matar v. Dichter*, 563 F.3d 9, 14 (2d Cir. 2009) ("At the time the FSIA

---

[6] Defendants note that "at least fifteen" similar lawsuits "have been filed in federal and state courts in California, Florida, Illinois, New Jersey, New York, Pennsylvania, Texas, and Wisconsin" (Dkt. #32 at p. 9). Defendants also note that "not a single one of these lawsuits has survived a motion to dismiss" (Dkt. #32 at pp. 9–10).

[7] 28 U.S.C. §§ 1602 et seq. are known as the Foreign State Immunities Act ("FSIA"). Section 1604 articulates the immunity granted to foreign states, and §§ 1605–1607 set forth the exceptions to foreign state immunity (none of which have been invoked by Plaintiff), the extent of liability, and counterclaims.

was enacted, the common law of foreign sovereign immunity recognized an individual official's entitlement to immunity for acts performed in his official capacity."). The act of state doctrine applies when "'the relief sought or the defense interposed would [require] a court in the United States to declare invalid the official act of a foreign sovereign performed within' its boundaries." *World Wide Min., Ltd. v. Republic of Kaz.*, 296 F.3d 1154, 1164–65 (D.C. Cir. 2002) (quoting *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400, 405 (1990)).

Similarly, United States federal and state courts apply the doctrine of international comity when faced with actions of foreign sovereigns. *See, e.g.*, *Derr v. Swarek*, 766 F.3d 430, 437 (5th Cir. 2014). "Judgments of a foreign country, unlike judgments of a sister state, are not entitled to the protection of full faith and credit under . . . the United States Constitution, but are enforced on the basis of comity." *Id.* (citing *Banque Libanaise Pour Le Commerce v. Khreich*, 915 F.2d 1000, 1004 (5th Cir. 1990)). "Comity is 'the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.'" *Id.* (citing *Hilton v. Guyot*, 159 U.S. 113, 164 (1895)). Accordingly, United States state and federal courts give deference to judgments of foreign sovereigns unless patently unfair or invalid. *See id.* at 438 ("If an otherwise valid judgment is rendered in a foreign court, the merits of the case will not be re-litigated if 'there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect.'") (quoting *Hilton*, 159 U.S. at 202–03).

## ANALYSIS – FOREIGN-POLICY ABSTENTION DOCTRINES

As alleged by Plaintiff in his Complaint, Defendants Ofek ("a Judge in the Family Court of Tel Aviv"), Shilo ("a judge in the District Court of Tel Aviv sitting in Family Appeals"), Meshulam ("a Magistrate at the Family Court of Tel Aviv"), Akuka ("a Magistrate at the Israel Enforcement and Collections Authority"), Sa'ar ("Minister of Justice in Israel"), and Hayut ("chief judge of the Supreme Court in Israel") (collectively, "Israeli Judicial Officials") are all current or former members of the Israeli judicial system (Dkt. #1 at ¶¶ 9, 10, 12, 13, 14, 15). The actions alleged by Plaintiff are all predicated on the judgments and rulings promulgated by the Israeli Judicial Officials under the current laws of Israel. As such, the Israeli Judicial Officials were all acting on behalf of a foreign sovereign, and they are immune from liability pursuant to the act of state doctrine and FSIA.

Additionally, any judgment Plaintiff received from the courts of Israel are entitled to deference under the doctrine of comity. This court cannot impose liability against the Israeli Judicial Officials for actions taken on behalf of the authority vested in them. Accordingly, all claims against the Israeli Judicial Officials should be **DISMISSED WITH PREJUDICE**.  The remainder of this report and recommendation addresses only the remaining two Defendants, Nefesh B'Nefesh and Halperin-Kaddari.

## LEGAL STANDARD – RULE 12(b)(1): STANDING

Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). A federal court has original jurisdiction to hear a suit when it is asked to adjudicate a case or controversy that arises under federal-question or diversity jurisdiction. U.S. CONST., art. III, § 2, cl. 1; 28 U.S.C. §§ 1331–32. Whether a federal court has jurisdiction must "be established as a threshold matter" and "is inflexible and without exception." *Webb v. Davis*,

940 F.3d 892, 896 (5th Cir. 2019) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998)). A Rule 12(b)(1) motion to dismiss allows a party to challenge the exercise of the court's subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). In analyzing a motion to dismiss under Rule 12(b)(1), a court may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Plaintiff, as the party asserting jurisdiction, bears the burden of proof to defeat a Rule 12(b)(1) motion to dismiss. *Id.*

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish Article III standing, "a plaintiff must show: (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan*, 504 U.S. at 560–61). "As the party invoking federal jurisdiction," Plaintiff "bear[s] the burden of demonstrating" standing to bring the claims alleged. *Id.* at 2207. Primarily at issue here is the first element—injury in fact. "To establish injury in fact, a plaintiff must show that he [] suffered 'an invasion of a legally protected interest'" that goes beyond "conjectural or hypothetical." *Spokeo, Inc. v. Roberts*, 578 U.S. 330, 339 (2016) (citing *Lujan*, 504 U.S. at 560).

### ANALYSIS – RULE 12(b)(1): STANDING

Plaintiff has not established that he has been injured by the Defendants in a concrete or particularized way. Plaintiff's alleged damages are that there are adverse judgments against him for child support and alimony; that he has lost possession of real and personal property; and that he has lost money related to business dealings due to being detained in Israel in connection with his divorce proceedings (Dkt. #1 at ¶¶ 36–62, 81.d). Plaintiff has not alleged in his Complaint

(Dkt. #1) or his Response to Defendants' Motion to Dismiss (Dkt. #42) how the actions of Defendant Halperin-Kaddari or Defendant Nefesh B'Nefesh are causally connected to these alleged damages. Certainly, the teachings or philosophies ascribed to Defendant Halperin-Kaddari, an Israeli Professor, have no causal connection to Plaintiff's divorce proceedings. Assuming *arguendo* that Plaintiff's characterization of Defendant Halperin-Kaddari is correct, Plaintiff has not pled a plausible causal link between her "propaganda center for male hate mongering, empowering women at the expense of men's rights" and the actions of Israeli family courts (Dkt. #1 at ¶ 101). Even if Plaintiff were to properly establish a connection between Defendant Halperin-Kaddari and the Israeli judiciary, any results of the courts are official acts of state and do not give rise to liability. Further, his allegation that he never would have immigrated to Israel to marry an Israeli woman over a decade prior had it not been for the representations allegedly made by Defendant Nefesh B'Nefesh is too far removed from his divorce proceedings (Dkt. #1 at ¶¶ 39–40, 95).[8] The connection Plaintiff tries to draw from Defendant Halperin-Kaddari and Defendant Nefesh B'Nefesh to the Israeli Judicial Officials "is not a reasonable inference from the facts alleged. To the extent Plaintiff suffered injury from [Israeli divorce proceedings], such injuries are more directly traceable to the actions of his ex-wife than to the Israeli court that adjudicated the dispute."[9] Accordingly, because Plaintiff does not have standing to bring this lawsuit against Defendant Nefesh B'Nefesh and Defendant Halperin-Kaddari, and the Israeli Judicial Officials are immune, the entirety of the Complaint should be **DISMISSED WITH PREJUDICE**.

---

[8] Specifically, Plaintiff asserts: "Had it been disclosed [that Israel is a vicious, brutal, violent and corrupt country,] Plaintiff would have never married an Israeli woman would never immigrate to Israel and would never voluntarily put himself directly in the 'mouth of the beast' that wants to eat him alive" (Dkt. #1 at ¶¶ 93, 95).

[9] *Eliahu v. Israel*, No. 14-cv-001636-BLF, 2015 WL 981517 at *8 (N.D. Cal. Mar. 3, 2015). Similar to the present case, in *Eliahu*, the Plaintiff sued the State of Israel about the outcome of his divorce proceedings, alleging that he was harmed by the courts' "'ideology of anti-male radical feminism' and its 'unique stubbornness to separate itself from the rest of the nations in the area of family law,' whereby the rights of women are always favored over those of men in the family courts." *Id.* at *2.

## LEGAL STANDARD – RULE 12(b)(1): SUBJECT MATTER JURISDICTION

As addressed above, subject matter jurisdiction in a federal court can be established in two ways: federal question or diversity. 28 U.S.C. §§ 1331, 1332. Federal question jurisdiction includes "all civil actions arising under the constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Diversity jurisdiction is established when the amount in controversy exceeds $75,000.00 and the matter is between "(1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state . . . ; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state . . . as plaintiff and citizens of a State or different States." 28 U.S.C. § 1332.[10]

The court will accept as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to the plaintiff. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). Once a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)). When a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety. *Id.*; see also FED. R. CIV. P. 12(h)(3).

---

[10] Plaintiff does not assert a basis for subject matter jurisdiction via diversity of citizenship. Indeed, Plaintiff has not alleged any facts to invoke diversity of citizenship. For § 1332 to apply, Plaintiff must establish his own citizenship, which he has not done. In his Complaint, Plaintiff merely states that he "is Australian born and a resident of Collin County, Texas" and that he immigrated to Israel in 2007 (Dkt. #1 at ¶ 8). It is unclear whether Plaintiff is a citizen of Australia, Israel, or the United States.

It is true that "parties who proceed *pro se* are often given more leeway than represented parties in correcting errors in pleadings," and "a court must liberally construe a *pro se* complaint, taking all well-pleaded allegations as true." *Simmons*, 106 F. Supp. 3d 799, 803; *Fields v. Lackey*, No. 4:16-CV-607, 2018 WL 3018869, at *3 (E.D. Tex. June 18, 2018). However, "*pro se* litigants are [still] expected to comply with the rules of pleading." *Simmons*, 106 F. Supp. 3d at 803. Also, a *pro se* plaintiff's complaint "must set forth facts giving rise to a claim on which relief may be granted." *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam).

## ANALYSIS – RULE 12(b)(1): SUBJECT MATTER JURISDICTION

Assuming *arguendo* that Plaintiff has standing to bring the lawsuit against Defendants Nefesh B'Nefesh and Halperin-Kaddari, the court must have subject matter jurisdiction over Plaintiff's claims. Plaintiff asserts federal question jurisdiction under § 1331 (Dkt. #1 at ¶ 17). Plaintiff's federal question jurisdiction allegedly arises under "FLSA (29 U.S.C. § 206), RICO (18 U.S.C. § 1962), and Mail and Wire Fraud (18 U.S.C. §§ 1341, 1343)" (Dkt. #1 at ¶ 17). Plaintiff also alleges that based upon supplemental jurisdiction,[11] the court can adjudicate his negligence claim pursuant to 28 U.S.C. § 1367 (Dkt. #1 at ¶ 17).[12]

Even taking Plaintiff's factual allegations as true, Plaintiff has not asserted facts to support the causes of action he alleges against Defendants that would give rise to a claim on which relief may be granted. Each of Plaintiff's causes of action are addressed below.

---

[11] "Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

[12] *See supra*. n. 1. Plaintiff lists numerous federal statutes throughout his Complaint, most of which are not addressed in his causes of action. Accordingly, unless specifically addressed in his causes of action, the court does not address them here.

***Cause of Action 1: RICO Against All Defendants***

It is unlawful under 18 U.S.C. § 1962 for a person to use or invest, in foreign or interstate commerce, income from an enterprise arising from a pattern of racketeering activity; to acquire or maintain an interest in an enterprise through a pattern of racketeering activity; to conduct or participate in the conduct of an enterprise's affairs through a pattern of racketeering activity; or to conspire to do any of the above acts. 18 U.S.C. § 1962(a)–(d). "To state a valid claim upon which relief can be granted under § 1962," Plaintiff must show that Defendants (1) engaged in (2) a pattern of racketeering activity (3) by any of the means listed in § 1962. *Gordon v. Neugebauer*, 57 F. Supp. 3d 766, 777 (N.D. Tex. 2014) (citing *In re Burzynski*, 989 F.2d 733, 741–42 (5th Cir. 1993)). Plaintiff must establish a "pattern of racketeering activity" by showing (1) a violation of at least two activities listed in § 1961(1) and showing (2) "that the predicate acts form a pattern because they are related to each other and they have continuity." *Id.*

Plaintiff asserts that "Defendants have devised a 'racketeering activity' that is nefarious, illegal and in violation of the laws of nations, in specifically targeting victims . . . who are male, non-Israelis by origin and are or were married to Israeli women" (Dkt. #1 at ¶ 64). The alleged extortion is that Defendant Nefesh B'Nefesh enticed Plaintiff to immigrate to Israel, Defendant Haplerin-Kaddari espoused anti-male ideologies, and the Israeli Judicial Officials implemented those ideologies against Plaintiff to acquire great sums of money from him simply because he is a non-Israeli male (Dkt. #1 at ¶¶ 63–83). Plaintiff alleges a pattern of conduct by illustrating three other divorce or child-custody cases where non-Israeli men received adverse judgments (Dkt. #1 at ¶¶ 72–79).[13] The judges in the three cases Plaintiff describes are Judge Hila Guervich, Judge

---

[13] Notably, none of the judges referenced in the three examples Plaintiff relies upon are the Israeli Judicial Officials in the present case. Yet somehow, their conduct is used to illustrate a pattern of racketeering activity committed by the Israeli Judicial Officials and Defendants Nefesh B'Nefesh and Halperin-Kaddari. Indeed, Plaintiff says "[t]his satisfied the continuity requirement" (Dkt. #1 at ¶ 78) (citing *H.J. Inc. v. N.W. Bell Tele. Co.*, 492 U.S. 229 (1989)).

Mirit Polus, and Judge Dolan Tavori (Dkt #1 at ¶¶ 72–77). Plaintiff does not connect the Israeli Judicial Officials in the instant lawsuit to the judges in the three referenced cases other than making a conclusory statement that these three other cases prove a pattern of racketeering activity (Dkt. #1 at ¶ 79). Neither does Plaintiff establish what prohibited activity was committed in these three other cases. Plaintiff includes no cases or discussion about how non-Israeli men are treated differently than Israeli men. He includes no factual allegations establishing how the eight named Defendants in the present case devised a racketeering enterprise. Rather, Plaintiff relies on conclusory statements, incendiary comparisons, and statements of law. As such, Plaintiff fails to establish that the named Defendants *engaged in a pattern of racketeering activity*. Indeed, claiming that the Defendants in the present case engaged in a pattern of activity by comparing it to the activities of other people does little to factually establish a pattern of racketeering activity on the part of the eight named Defendants.[14] For this reason, Plaintiff's first cause of action, RICO against all Defendants, fails to plausibly allege facts sufficient to support subject matter jurisdiction under 28 U.S.C. § 1332 and should be **DISMISSED WITH PREJUDICE**.

### *Cause of Action 2: Crimes Against Humanity*

Plaintiff lists no substantive laws to support his allegation of alleged crimes against humanity committed by Defendants. Plaintiff alleges Defendants violated "US Courts via UN international covenants and conventions on human rights" via sex discrimination (Dkt. #1 at ¶ 85). Plaintiff's cause of action for crimes against humanity merely lists conclusory assertions of alleged violations. Rather than provide elements of a legal right and how Defendants violated that right, this section of Plaintiff's Complaint simply states: "Plaintiff is entitled to invoke the Alien Tort Claims Act and the TVPA (Trafficking Victim Protection Act of 2000)" (Dkt. #1 at ¶ 90). Plaintiff

---

[14] Plaintiff lists five predicate acts (Dkt. #1 at ¶ 81(a)–(e)), but the court need not address them as Plaintiff has not established a pattern of racketeering activity *engaged in by Defendants*.

does not argue how he is entitled to invoke these Acts, nor does he actually "invoke" them. Instead, Plaintiff attempts to equate his divorce proceedings to the atrocities of the Holocaust and leaves the rest to the court to infer. However, a "court need not 'conjure up unpled allegations or construe elaborately arcane scripts' to save a [*pro se*] complaint." *Govea v. ATF*, 207 F. App'x 369, 372 (5th Cir. 2006) (per curiam) (quoting *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995)). Indeed, the court declines to entertain such offensive and outrageous arguments. Accordingly, having failed to plead facts sufficient to raise a federal question in his second cause of action, the court recommends that Plaintiff's claim for Crimes against Humanity be **DISMISSED WITH PREJUDICE**.

### Cause of Action 4: RICO Against Defendant Haplerin-Kaddari[15]

Again, to establish a RICO claim against a defendant, a plaintiff must establish that the defendant (1) engaged in (2) a pattern of racketeering activity (3) by any of the means listed in § 1962. *Gordon*, 57 F. Supp. 3d at 777. Racketeering activity is defined by 18 U.S.C. § 1961(1) and specifically includes extortion, mail fraud, and wire fraud, each of which have been alleged by Plaintiff.

Plaintiff's fourth cause of action is a laundry list of personal grievances against Defendant Haplerin-Kaddari; however, Plaintiff does not draw any connection between Defendant Halperin-Kaddari's actions and the decisions of the Israeli judicial system. Plaintiff makes the conclusory statement that "Defendant Kaddari is responsible for all this extortion, mass torture of men and mass robbery of men, by taking donations from the gullible American donors and spending their money to create an inferno for Jewish men in Israel" (Dkt. #1 at ¶ 119). Rather than asserting

---

[15] While listed as Plaintiff's fourth cause of action, the court considers Plaintiff's third cause of action at this juncture because it potentially raises a federal question under RICO. The third cause of action involves the state tort claim of negligence.

factual allegations that would give rise to liability under RICO, Plaintiff uses this cause of action to write a scathing review of Defendant Halperin-Kaddari's academic endeavors (Dkt. #1 at ¶¶ 99–122). Without showing any causation, Plaintiff alleges Defendant Halperin-Kaddari is liable to Plaintiff for "$8.5 Million" (Dkt. #1 at ¶ 122).

Having failed to establish a RICO claim against Defendant Halperin-Kaddari, this court recommends Plaintiff's fourth cause of action be **DISMISSED WITH PREJUDICE**.

### *Cause of Action 3: Negligence of Defendant Nefesh B'Nefesh*

#### A.     Legal Standard & Analysis: Supplemental Jurisdiction

"*[I]n any civil action of which the district courts have original jurisdiction*, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (emphasis added). "[T]he Supreme Court recognized that 'in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues.'" *Mitchell v. Advanced HCS, L.L.C.*, 28 F. 4th 580, 588 (5th Cir. 2022) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). "Like most federal question doctrines, *Grable* is applied in the shadow of the well-pleaded complaint rule." *Id.* (citing *The Lamar Co., L.L.C. v. Miss. Transp. Comm'n*, 976 F.3d 524, 529 (5th Cir. 2020). "Thus, the court looks to the face of the plaintiff's well-pleaded complaint to determine whether the issues it raises implicate *Grable*. *Id. Grable* looks to whether "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Id.* Cases that meet the *Grable*

requirements are "special and small." *Id.* (quoting *Bd. Of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 721 (5th Cir. 2017).

This court recommends that supplemental jurisdiction should not be exercised over Plaintiff's remaining state law claim now that the federal claims have been recommended for dismissal. 28 U.S.C. § 1367(c)(3). It is therefore recommended that the remaining state law claim should be **DISMISSED WITHOUT PREJUDICE** to the refiling of the same in the appropriate state court, if one exists. *See Robertson v. Neuromedical Center*, 161 F.3d 292, 296 (5th Cir. 1998) (". . . if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well); Reese v. Anderson, 926 F.2d 494, 501 n. 9 (5th Cir. 1991) ("[s]uch dismissal is perhaps the practice in this circuit . . .").

## LEGAL STANDARD – RULE 12(b)(2): PERSONAL JURISDICTION

"After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that *in personam* jurisdiction exists." *McAfee, LLC v. Kinney*, No. 4:19-CV-463, 2019 WL 4077647, at *2 (E.D. Tex. Aug. 29, 2019); *see also Lahman v. Nationwide Provider Sols.*, No. 4:17-CV-00305, 2018 WL 3035916, at *4 (E.D. Tex. June 19, 2018) (citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)); *Johnston v. Multidata Sys. Int'l. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "To satisfy that burden, the party seeking to invoke the court's jurisdiction must 'present sufficient facts as to make out only a prima facie case supporting jurisdiction,' if a court rules on a motion without an evidentiary hearing." *Lahman*, 2018 WL 3035916, at *4 (quoting *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000)).[16]

---

[16] "[R]egardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (quoting *S. Christian Leadership Conf. v. Sup. Ct. of the St. of La.*, 252 F.3d 781, 786 (5th Cir. 2001)).

Courts conduct a two-step inquiry when a defendant challenges personal jurisdiction: (1) "absent a controlling federal statute regarding service of process, the court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant"; and (2) "the court establishes whether the exercise of jurisdiction is consistent with due process under the United States Constitution." *Id.* (citing *Ham v. La Cinega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993)). "The Texas long-arm statute confers jurisdiction to the limits of due process under the Constitution"; accordingly, "the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees." *Id.* (citing *Command-Aire Corp. v. Ont. Mech. Sales & Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992); *Bullion*, 895 F.2d at 215–16); *see Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854 (5th Cir. 2000). "The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established minimum contacts with the forum state 'such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).[17] Additionally, specific personal jurisdiction exists "over a nonresident defendant whose contacts with the forum state are singular or sporadic only *if* the cause of action asserted arises out of or is related to those contacts." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016) (emphasis in original). These

---

[17] "Minimum contacts with a forum state can be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction." *Lahman*, 2018 WL 3035916, at *4 (citing *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)). "General jurisdiction exists only when the defendant's contacts with the forum state are so 'continuous and systematic' as to render them essentially at home in the forum State." *Lahman*, 2018 WL 3035916, at *5 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). "Substantial, continuous and systematic contact with a forum is a difficult standard to meet and requires extensive contacts between a defendant and the forum." *Id.* (citing *Johnston*, 523 F.3d at 609). Relevant to Defendants here, an individual's domicile is "the paradigm forum for the exercise of general jurisdiction." *Arrow Elecs., Inc. v. Fireracker, LLC*, No. 4:17-CV-00895, 2018 WL 1761883, at *2 (E.D. Tex. Apr. 12, 2018) (quoting *Daimler*, 571 U.S. at 137). Plaintiff's allegations do not show the court has general jurisdiction over Defendants (*See* Dkt. #1). General jurisdiction does not extend to Defendants "because there is no indication that . . . [Defendants acted in a manner] to enable a purposeful-availment argument." *See VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 672 (N.D. Tex. 2020).

contacts with the forum state "must be more than 'random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *ITL Int'l Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012). And because Plaintiff must show personal jurisdiction exists for each claim, the court must look to Defendants' contacts with Texas as to each claim asserted. *Ecigrusa LLC v. Silver State Trading LLC*, No. 3:21-CV-1846-B, 2022 WL 1321573, at *4 (N.D. Tex. May 3, 2022) (citing *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495-96, 500 (5th Cir. 2022) (separately analyzing personal jurisdiction for intentional tort claims and breach-of-contract claims) ("different tests for minimum contacts may apply to different types of claims.").

## ANALYSIS – RULE 12(b)(2): PERSONAL JURISDICTION

The parties disagree whether Defendants were properly served in this matter, but the court need not address this issue because it finds that it lacks personal jurisdiction over Defendants on other grounds. To start, Plaintiff has not established that any of the eight Defendants have minimum contacts with the state that are sufficient to invoke Texas's long-arm statute, which reaches as far as due process allows. The Due Process Clause allows a court to "exercise [] personal jurisdiction over a non-resident defendant when the defendant has established minimum contacts with the forum state 'such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Lahman*, 2018 WL 3035916, at *4 (quoting *Int'l Shoe Co.*, 326 U.S. at 316). Plaintiff has not alleged facts sufficient to raise an inference that Defendants purposely availed themselves of the protections and privileges of the forum state. In fact, Plaintiff makes a blanket, conclusory statement that the court "has personal jurisdiction over the Defendants because Defendants operate business in the State of Texas" (Dkt. #1 at ¶ 18). The only Defendant Plaintiff directly connects to Texas is Nefesh B'Nefesh (Dkt. #1 at ¶ 11). While Plaintiff alleges Defendant

Nefesh B'Nefesh runs a non-profit organization that promotes immigration to Israel, he does not allege any facts connecting that operation to his alleged damages (Dkt. #1; Dkt. # 32 at p. 23). Based on the facts alleged, Defendant Nefesh B'Nefesh's contacts with the forum are too attenuated from Plaintiff's alleged injury to establish personal jurisdiction. *ITL Int'l Inc.*, 669 F.3d at 498. The other seven Defendants have no contacts with the forum as illustrated by the pleadings. Therefore, Plaintiff is unable to establish personal jurisdiction for any of the Defendants, and his Complaint should be **DISMISSED WITH PREJUDICE** as to all Defendants.

### LEGAL STANDARD & ANALYSIS
### RULE 12(b)(6): FAILURE TO STATE A CLAIM

"To survive a motion to dismiss [pursuant to Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).[18] A court generally may not "go outside the complaint" in considering a Rule 12(b)(6) motion but may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted); *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

As discussed at length herein, Plaintiff has not alleged facts sufficient to give rise to liability under any of his federal causes of action: RICO claims against all Defendants; Crimes Against Humanity; and RICO claim against Defendant Halperin-Kaddari. Plaintiff's Complaint consists primarily of background facts, recitation of the law, or conclusory statements (Dkt. #1). Such

---

[18] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555.

composition will not be sufficient to raise a plausible claim of liability above a speculative level. Factoring in Plaintiff's failure to meet the elements of his federal causes of action, the court finds that Plaintiff has failed to state a claim for which relief may be granted. Therefore, the court recommends that Plaintiff's Complaint, with respect to the federal claims, be **DISMISSED WITH PREJUDICE**.

### LEGAL STANDARD – FUTILITY OF AMENDING COMPLAINT

"Generally, . . . a pro se litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009). "Granting leave to amend is not required, however, if the plaintiff has already pleaded his 'best case.'" *Id.* "[P]leading review is not a game where the plaintiff is permitted to file serial amendments until he finally gets it right." *Whiddon v. Chase Home Fin., LLC*, 666 F. Supp. 2d 681, 693 (E.D. Tex. 2009) (quoting *U.S. ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 404 (5th Cir. 2004)). An opportunity to replead is "unnecessary where the facts alleged are 'fantastic or delusional scenarios' or where the legal theory upon which a complaint relies is 'indisputably meritless.'" *Gregory v. McKennon*, 430 F. App'x 306, 308 (5th Cir. 2011) (internal citations omitted).

### ANALYSIS – FUTILITY OF AMENDING COMPLAINT

In the present case, Plaintiff had an opportunity to plead his best case. Plaintiff's Complaint is over twenty-seven (27) pages. Notwithstanding, Plaintiff has not alleged facts that establish either subject matter or personal jurisdiction. Indeed, Plaintiff's case is one of several across the county that make similar allegations against Israeli state officials, organizations, and individuals. Each of these cases has been dismissed on similar grounds.[19] For example, in *Eliahu v. Jewish*

---

[19] *See, e.g.*, *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709 (2d Cir. 2019); *see also Eliahu v. Israel*, No. 14-cv-1636, 2015 WL 981517 (N.D. Cal. Mar. 3, 2015) (dismissing plaintiff's similar claims under Foreign Sovereign Immunities

*Agency for Israel*, four plaintiffs brought suit against "current and former officials of the Government of Israel [. . . ,] nine charitable organizations and three affiliated individuals." 919 F.3d 709, 712 (2d Cir. 2019). The "[p]laintiffs' claims arise from their dissatisfaction with the outcome of divorce proceedings in Israel and subsequent efforts by their ex-wives, with the assistance of the charitable organizations, to collect child support from them." *Id.* The court in *Eliahu* dismissed the allegations against the Israeli officials based on immunity and the other defendants due to failure to state a claim. *Id.* at 712–13. Additionally, the court imposed an "Anti-Filing Injunction" against two of the four plaintiffs for "their history of vexatious litigation[20]; their improper motives for pursuing the litigation; and the expense to defendants and burden on the courts." *Id.* at 714. Based on the foregoing, the court recommends that allowing Plaintiff the opportunity to amend his Complaint would be futile due to the deficiencies addressed herein.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the court recommends that Israeli Judicial Official Defendants are immune from liability and should be **DISMISSED** from Plaintiff's Complaint (Dkt. #1); that Defendants' Joint Motion to Dismiss (Dkt. #32) be **GRANTED**; that Plaintiff's Complaint (Dkt. #1) be **DISMISSED WITH PREJUDICE** with respect to the federal claims; and that Plaintiff's state law claim should be **DISMISSED WITHOUT PREJUDICE** to the refiling of the same in

---

Act and lack of standing); *Newman v. Jewish Agency for Israel*, No. 16-cv-7593, 2017 WL 6628616 (S.D.N.Y. Dec. 28, 2017) (dismissing a group of seven (7) divorced fathers' suit against Israeli officials and charities for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to establish the elements of RICO; the court also imposed sanctions against two plaintiffs, Eliahu and Weisskopf); *Weisskopf v. Marcus*, 695 F. App'x 977 (7th Cir. 2017) (dismissing for lack of personal jurisdiction); *Issaschar v. ELI Am. Friends of Israel Ass'n for Child Protection*, Inc.,No. 13–2415, 2014 WL 716986 (Feb. 25, 2014) (dismissing based on lack of personal jurisdiction and failure to establish elements of a RICO claim based on an Israeli divorce proceeding); *Haim v. Neeman*, No. 12–351 (JLL), 2013 WL 12157279 (Jan. 23, 2013) (dismissing suit related to Israeli child-custody proceedings for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted).

[20] ". . . Weisskopf has a demonstrable history of vexatious and baseless litigation against defendants. Prior to this action, Plaintiffs, led by Weisskopf, filed twelve other actions in either federal or state courts throughout the United States." *Eliahu*, 919 F.3d at 714 (internal citations omitted).

the appropriate state court, if one exists.[21] Any request for relief not addressed by this report and recommendation should be denied as **MOOT**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 6th day of September, 2023.**

AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE

---

[21] *See Weisskopf v. Neeman*, Opinion and Order at 1, No. 3:11-cv-00665-wmc (W.D. Wis. filed Sept. 27, 2011) (dismissing with prejudice where "[e]ven under the most lenient interpretation, . . . plaintiff's pleadings present a smorgasbord of manifest, incurable jurisdictional defects, failing further to state even a facially-plausible claim upon which relief can be granted").